UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JAMES C.,

                                        Plaintiff,

v.                                                          5:19-CV-1206 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OLINSKY LAW GROUP                          HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
250 S. Clinton St., Ste. 210
Syracuse, New York 13202


U.S. SOCIAL SECURITY ADMIN.              RAMI M. VANEGAS, ESQ.
 *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### <u>MEMORANDUM-DECISION AND ORDER</u>

        Plaintiff James C. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying his application for Supplemental Security Income ("SSI").  (Dkt. No.

1.)  This case has proceeded in accordance with General Order 18 of this Court which sets forth

the procedures to be followed when appealing a denial of Social Security benefits.  Both parties

have filed briefs.  (Dkt. Nos. 9, 12.)  Oral argument was not heard.  Pursuant to 28 U.S.C. §

636©), the parties have consented to the disposition of this case by a Magistrate Judge.  (Dkt.

Nos. 3, 7.)  For the reasons discussed below, the Commissioner's decision denying Plaintiff's

disability benefits is affirmed.

# I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on December 12, 1966.  (Administrative Transcript at 28, 145, 573.[1])
He graduated high school after attending special education classes, and subsequently obtained a
two year college degree.  (T. 375, 574.)  At the time of his June 25, 2019, administrative hearing,
Plaintiff was homeless but occasionally stayed with his girlfriend.  (T. 40, 375, 574.)  He had
worked intermittently as a courier, maintenance worker, and handyman.  (T. 196, 375, 949.)

On November 24, 2015, Plaintiff filed an application for SSI, alleging an onset date of
November 24, 2014.  (T. 145-146.)  Plaintiff's application was initially denied on February 3,
2015.  (T. 59-68.)  Thereafter, Plaintiff filed a written request for a hearing, which was held on
May 1, 2017, before Administrative Law Judge ("ALJ") Elizabeth Koennecke.  (T. 25-42.)  On
June 13, 2017, the ALJ issued a written decision finding Plaintiff was not disabled under the
Social Security Act because none of his impairments or combination of impairments could be
considered severe.  (T. 10-24.)  On January 10, 2018, the Appeals Council denied Plaintiff's
request for review.  (T. 1-6.)  Plaintiff commenced an action in the Northern District of New
York on March 15, 2018.  (T. 612-619.)  The Commissioner stipulated to an Order dated
October 4, 2018, remanding the case for further administrative proceedings in accordance with
the fourth sentence of 42 U.S.C. § 405(g).  (T. 620-623.)

On October 23, 2018, the Appeals Council remanded Plaintiff's claim to ALJ Koennecke
for further proceedings.  (T. 624-625.)  On June 25, 2019, she held a hearing at which Plaintiff
and Vocational Expert ("VE") Michael Smith testified.  (T. 560-590.)   The ALJ also allowed

---

[1]  The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.
Citations not made to the Administrative Transcript will use the page numbers assigned by the
Court's CM/ECF electronic filing system.

Plaintiff an opportunity to supplement the administrative record.  (T. 648-649.)  On July 19, 2019, the ALJ again found Plaintiff was not disabled under the Social Security Act.  (T. 511-531.)  In response, Plaintiff commenced this action on September 27, 2019.  (Dkt. No. 1.)

## II.  RELEVANT LEGAL STANDARD

### A.  Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the decision-maker determines:

---

[2]  While the Supplemental Security Income program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working.  *Id.*

**B.      Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42

4

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence" is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's findings must be sustained "even where substantial evidence may support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative record in place of the Commissioner's if the record contains substantial support for the ALJ's decision.  *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

### C.    Standards for ALJ Evaluation of Opinion Evidence

In making a disability determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue.  SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical

issues," but are "administrative findings."  The responsibility for determining these issues

belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include

whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's Residual

Functional Capacity ("RFC"); how the vocational factors apply; and whether the plaintiff is

"disabled" under the Act.  *Id.*

      In evaluating medical opinions on issues reserved to the Commissioner, the ALJ must

apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state

the legal rules being applied and the weight being accorded to the evidence considered.

*Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing

*Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation

omitted)).

      In terms of weighing opinion evidence, the Second Circuit has long recognized the

treating physician rule set out in 20 C.F.R. § 404.1527©.[3]  "Thus, the opinion of a claimant's

treating physician as to the nature and severity of the impairment is given controlling weight so

long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record."  *Greek v. Colvin*,

802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

However, there are situations where the treating physician's opinion is not entitled to controlling

weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length,

---

     [3]  For claims filed on or after March 27, 2017, a new set of regulations apply.  These new
regulations do "not defer or give any specific evidentiary weight, including controlling weight,
to any medical opinion(s)."  20 C.F.R. § 416.920c(a).  But since Plaintiff filed his claim on
November 24, 2014, the treating physician rule applies.  *See Claudio v. Berryhill*, No. 3:17-CV-
1228 (MPS), 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed
her claim before March 27, 2017, I apply the treating physician rule under the earlier
regulations.").

nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3)

the consistency of the opinion with the remaining medical evidence; and (4) whether the

physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418

(2d Cir. 2013)). "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not

required to explicitly go through each and every factor of the Regulation." *Blinkovitch v.*

*Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan.

23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), adopted by 2017 WL

782901 (N.D.N.Y. Feb. 28, 2017).  After considering these factors, the ALJ must

"comprehensively set forth [his] reasons for the weight assigned to a treating physician's

opinion." *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original).

"The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating

physician is a ground for remand." *Id*. (quoting *Burgess*, 537 F.3d at 129-30).

  The factors for considering opinions from non-treating medical sources are the same as

those for assessing treating sources, with the consideration of whether the source examined the

claimant replacing the consideration of the treatment relationship between the source and the

claimant.  *See* 20 C.F.R. § 404.1527(c)(1)-(6).  Additionally, when weighing opinions from

sources who are not considered "medically acceptable sources" under the regulations, the ALJ

must consider the same factors as used for evaluating opinions from medically acceptable

sources.  *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r*

*of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

  **D.**  **Standards for ALJ Evaluation of Symptoms**

  In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the

plaintiff's reports of pain and other symptoms into account.  *Genier v. Astrue*, 606 F.3d 46, 49

(2d Cir. 2010).  The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'"  *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use the term.  SSR 16-3p, 81 FR at 14167.  Instead, symptom evaluation tracks the language of the regulations.[4]  The evaluation of symptoms involves a two-step process.  First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ."  20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'"  *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

---

[4]  The standard for evaluating subjective symptoms has not changed in the regulations.  Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167.  The Court will remain consistent with the terms as used by the Commissioner.

[5]  The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p.  As stated above, the factors considered are the same under both rulings.  The 2016 ruling has removed the emphasis on "credibility."

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

## III.   THE ALJ'S JULY 24, 2019, DECISION

In her July 24, 2019, decision, the ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. (T. 513-524.) First, the ALJ found Plaintiff had not engaged in substantial gainful activity since his application date of November 24, 2014. (T. 513.) The ALJ next determined Plaintiff's "variously characterized

9

mental impairments" constitutes a severe impairment, as did the combination of Plaintiff's

obesity, osteoarthritis, and partially amputated right ring finger.  (T. 515.)  The ALJ then

determined Plaintiff does not have an impairment or combination of impairments meeting or

medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T.

515-518.)

The ALJ next found, based on the above-stated impairments, Plaintiff has the residual

functional capacity ("RFC") to perform "light work" with certain limitations:

> Mentally, Plaintiff retains the ability to understand and follow
> simple instructions and directions, perform simple tasks
> independently, maintain attention and concentration for simple
> tasks, and regularly attend to a routine and maintain a schedule.
> He can handle simple, repetitive, work-related stress, in that he can
> make occasional decisions directly related to the performance of
> simple tasks in a position with consistent job duties that does not
> require him to supervise or manage the work of others.  The
> claimant should avoid work that requires more complex interaction
> or joint effort to achieve work goals.  He can tolerate superficial
> contact with the public.

(T. 518-523.)

Based upon this RFC and the VE testimony, the ALJ determined Plaintiff was not

disabled because there were a significant number of jobs in the national economy he could

perform.  (T. 523.)  Specifically, the ALJ relied upon the vocational expert's testimony to

conclude someone of Plaintiff's "age, education, work experience, and residual functional

capacity" could perform the requirements of representative occupations such as "labeler,"

"cleaner, housekeeping," and "collator operator."  (T. 524, 567-572.)  Thus, the ALJ determined

Plaintiff has not been under a disability, as defined in the Social Security Act, from November

24, 2014, through the decision date of July 24, 2019.  (T. 524.)

IV.     **THE PARTIES' CONTENTIONS**

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1) fails to comply with the Appeals Council's remand order; (2) fails to properly develop the record with regard to Plaintiff's physical impairments; and (3) fails to properly evaluate the medical opinion evidence related to Plaintiff's mental impairments.  (Dkt. No. 9 at 13-22.)  In response, the Commissioner contends the ALJ's decision complies with the Appeals Council's remand order, applies the correct legal standards, and is supported by substantial evidence.  (Dkt. No. 12 at 5-17.)

V.     **THE COURT'S ANALYSIS**

A.     **The ALJ Complied with the Appeals Council's Remand Order**

Plaintiff argues the ALJ failed to comply with the Appeals Council's October 23, 2013, remand order.  (Dkt. No. 9 at 13-15.)  Under 20 C.F.R. § 404.977(b), the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council remand order."  Failure to comply with an administrative remand order "can form the basis for a remand to the Commissioner."  *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 229 (E.D.N.Y. 2014) (citing 42 U.S.C. § 405(g)).

In her original June 16, 2017, decision, the ALJ ended her analysis at Step Two after finding none of Plaintiff's impairments were severe.  (T. 16-20.)  The Appeals Council determined the ALJ's cursory analysis failed to adequately consider Plaintiff's mental health records or the evidence therein of symptoms consistent with the various diagnoses of bipolar disorder, obsessive compulsive disorder ("OCD"), and post-traumatic stress disorder ("PTSD"). (T. 626.)  In addition, the ALJ excluded a treating source opinion regarding Plaintiff's mental impairments because she deemed it untimely.  (*Id*.)  The Appeals Council also found the ALJ's

evaluation of Plaintiff's physical impairments was similarly inadequate, because it lacked any discussion of the medical records associated with Plaintiff's allegations of headaches, tremors, and arthritis.  (T. 627.)

In light of these defects, the Appeals Council ordered the ALJ to (1) "Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence," which "may include, if warranted and available, appropriate physical and mental status consultative examinations and medical source opinions about what the claimant can still do despite the impairments"; (2) "If necessary, obtain evidence from a medical expert related to the nature and severity of and functional limitation resulting from the claimant's impairments"; (3) "Further consider the severity of the claimant's impairments.  In doing so, give further consideration to the treating and non-treating source opinions pursuant to the provisions of 20 CFR 416.927 and explain the weight given to such opinion evidence.  As appropriate, the Administrative Law Judge may request the treating and non-treating sources to provide additional evidence and/or further clarification of the opinions"; and (4) "If warranted by the expanded record, the Administrative Law Judge will proceed through the sequential evaluation process."  (T. 627.)

The ALJ's July 24, 2019, decision and the June 25, 2019, hearing transcript demonstrate the ALJ's compliance with the Appeals Council's order.  The ALJ allowed Plaintiff the opportunity to supplement the record with additional evidence prior to and after the hearing, and reviewed this evidence even though she might ordinarily have deemed it untimely.  (T. 511, 564-565.)  The ALJ then proceeded through the five-step evaluation process, including the consideration of treating source and consultative examiner opinions, along with Plaintiff's

medical records and testimony.  (T. 515-523.)  In doing so, she corrected the primary error

identified by the Appeals Council, by providing a more comprehensive review at Step Two

before finding some of Plaintiff's impairments rose to the level of "severe."  (T. 515, 626-627.)

Beyond ordering further evaluation at Step Two of the sequential analysis, the Appeals

Council's remand order qualifies its directions to the ALJ through the use of terms such as "[i]f

necessary," and "if warranted."  (T. 627.)  Therefore, the bulk of the Appeals Council's

directions to the ALJ merely called for her to exercise her discretion regarding evaluation of the

opinion and other evidence and the development of the record, so long as she complied with the

applicable regulations.  As discussed below, the ALJ's application of the five-step evaluation

process was supported by substantial evidence.  Therefore, the ALJ satisfied the terms of the

remand order.

### B. Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC

A claimant's RFC is the most he can do despite his limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."  *Id*.

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by

an individual's response to demands of work . . . must be reflected in the RFC assessment.'"

*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v. Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every shred of medical testimony." *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those portions of the medical opinions deemed most consistent with Plaintiff's overall treatment record and activities.  In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).  In light of the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and his activities of daily living, this Court concludes the RFC determination was supported by substantial evidence, as summarized below.

1.     Plaintiff's Physical Limitations

Dr. Elke Lorensen performed a consultative examination of Plaintiff on January 27, 2015.  (T. 380-383.)  During the examination, Plaintiff demonstrated a normal gait, could walk on heels and toes without difficulty, could perform a full squat, and required no assistive device to walk.  (T. 381.)  Plaintiff's cervical and lumbar spine showed full flexion, extension, and

rotary movement, and he had full range of motion in his upper and lower extremities.  (T. 382.)

Although Plaintiff complained of tremors in his hands, none were observed during the

examination, and Plaintiff demonstrated intact hand and finger dexterity and full grip strength

bilaterally.  (*Id*.)

Based on this examination, Dr. Lorensen opined Plaintiff had no gross physical

limitations.  (T. 383.)  The ALJ assigned "some weight" to Dr. Lorensen's opinion because it

was consistent with her overall examination.  (T. 519.)  However, the ALJ noted Plaintiff had a

partial amputation of his right ring finger and was diagnosed with bilateral primary osteoarthritis

in his knees after Dr. Lorensen's consultative examination.  (T. 520, 978.)  In recognition of the

limitations resulting from these severe impairments, the ALJ limited Plaintiff to light work.  (T.

520.)

Plaintiff contends this recognition was insufficient, because the ALJ failed to properly

develop the record to account for the limitations imposed by his partially amputated finger and

knee pain, and should have obtained an additional consultative examination or other expert

medical opinion.  (Dkt. No. 9 at 19-20.)  He further argues the ALJ was improperly relying on

her own lay opinion of Plaintiff's physical functional limitations in the absence of an up-to-date

opinion reflecting these new impairments.

Although the claimant has the general burden of proving he or she has a disability within

the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation to

develop the administrative record'" due to the non-adversarial nature of a hearing on disability

benefits.  *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2014) (quoting *Melville v. Apfel*, 198

F.3d 45, 52 (2d Cir. 1999)).  "'It is the ALJ's duty to investigate and develop the facts and

develop the arguments both for and against the granting of benefits.'"  *Moran v. Astrue*, 569 F.3d

108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).  An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports from the claimant's medical sources so long as permission is granted to request such reports." *Hart v. Comm'r of Soc. Sec.*, 07-CV-1270 (DNH), 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d)) (quotation marks omitted).

An ALJ has an affirmative duty to develop the administrative record even where the claimant is represented by counsel; however, the duty is not unlimited.  *See Dutcher v. Astrue*, No. 09-CV-1161 (LEK/VEB), 2011 WL 1097860, at *5 (N.D.N.Y. Mar. 7, 2011) (citing *Pratts v. Chater*, 94 F.3d 34. 37 (2d Cir. 1996))  "Generally, additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Janes v. Colvin*, 15-CV-1528 (GTS), 2017 WL 972110, at *4 (N.D.N.Y. Mar. 10, 2017), *aff'd* 710 F. App'x 33 (2d Cir. 2018) (citing 20 C.F.R. § 404.1520b; *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998) ).  The ALJ is not required to seek additional evidence when the evidence already in the record is "adequate for [the ALJ] to make a determination as to disability." *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996).  The "[m]ere absence of some medical records" is insufficient to show the ALJ failed in her duty or that reversible error occurred. *Mauzy v. Colvin*, No. 5:12-CV-866 (GLS/ESH), 2014 WL 582246, at *7 (N.D.N.Y. Feb. 13, 2013) ("The Commissioner's implementing regulations recognize that further development of the record is unnecessary, and administrative law judges may make determinations based upon existing evidence when it is consistent and sufficient to determine whether a claimant is disabled.") (citing 20 C.F.R. §§ 404.1520(b)(a), 416,920b(a)).

An ALJ has taken reasonable steps to complete the medical record when she asks claimant's attorney at a hearing if the medical records before her are complete, and the attorney answers affirmatively. *Orts v. Astrue*, No. 5:11-CV-0512 LEK/ESH, 2013 WL 85071, at *3 (N.D.N.Y. Jan. 7, 2013); *see Streeter v. Comm'r of Soc. Sec.*, No. 5:07–CV–858 (FJS), 2011 WL 1576959, *4 (N.D.N.Y. Apr. 26, 2011) (holding an ALJ had satisfied her duty to develop the record when "the ALJ specifically asked Plaintiff's counsel, during the hearing, if the medical records were complete, to which Plaintiff's counsel responded affirmatively").

In this case, the ALJ satisfied her duty to develop the record. As discussed above, the ALJ gave Plaintiff an extended opportunity to supplement the record. Moreover, in spite of Plaintiff's contention that the ALJ then applied her lay opinion to raw medical evidence, the ALJ's decision demonstrates a reliance on the professional medical findings in those records. (T. 520-521.)

In July 2017, Plaintiff cut the fourth finger on his right hand on a piece of glass while hanging a window. (T. 949.) Initially, Plaintiff treated the wound himself and did not seek medical attention. (*Id*.) When the finger did not heal properly, Plaintiff's primary physician prescribed an oral antibiotic. (*Id*.) Two weeks later, the finger remained infected and Plaintiff reported to the emergency room, where physicians determined amputation of the distal 2 phalanges was necessary. (*Id*.) At his June 2019 hearing, Plaintiff testified the amputation made it difficult to hold items in his right hand. (T. 576.)

The ALJ found Plaintiff's testimony to be inconsistent with the most recent treatment records related to his hand. (T. 520.) During a November 2017 follow-up appointment, Plaintiff described his hand as "doing well," and reported his hand pain had improved despite some sensitivity at the tip of his ring finger. (T. 910.) He reported an ability to use his right hand

17

"with only mild weakness of grip."  (*Id.*)  An examination showed reduced swelling and minimal tenderness to palpation.  (T. 911.)  The physician described the incision as "healed nicely" and Plaintiff as able to make a full composite fist.  (*Id.*)  Based on this examination, the physician found Plaintiff had no temporary impairment and was able to work without restrictions.  (T. 911.)

The ALJ's reliance on these medical findings constituted substantial evidence to support her disability determination, even in the absence of a formal medical opinion.  *See McNally v. Comm'r of Soc. Sec.*, No. 5:14-CV-76, 2015 WL 3621437, at *13 (MAD/ATB) (ALJ had substantial evidence for RFC determination where medical records did not show any complications arising from partial amputation of two fingers on plaintiff's right hand); *Moore v. Astrue*, No. 11-CV-952 (TJM/CFH), 2013 WL 935855, at *(N.D.N.Y. 2013) (ALJ could rely on examination results showing intact dexterity despite finger amputation).

The ALJ adopted a similar approach in evaluating the functional limitations associated with Plaintiff's arthritic knees.  (T. 519.)  In July 2019, Plaintiff testified knee pain had forced him to use a cane for the past three or four years. (T. 577.)  The ALJ reviewed Plaintiff's medical records dating back to 2015 and found no evidence of significant difficulty walking or the need for a cane, despite a September 2018 diagnosis of osteoarthritis in both knees and "palpable crepitation"[6] in both knees during examinations.  (T. 519, 958, 962, 965, 979.)  Despite this documented knee pain, Plaintiff regularly exhibited a normal gait during physical examinations between 2015 and 2019.  (T. 380, 711, 714,719, 725, 728, 736, 745, 965, 979, 982, 985, 988.)

---

[6]  Crepitus is a crackling, crunching, grinding or grating noise when flexing a joint, such as bending a knee.  It can be a sign of arthritis, or indicate a joint injury, cartilage wear, or bone fracture.  *See* https://www.cedars-sinai.org/discoveries/crepitus.html.

Plaintiff correctly points out the ALJ's error in stating "none of his medical providers ever mention his using or needing any type of assistive device." (T. 520.) To be sure, certain mental therapy notes describe Plaintiff's use of a cane at counseling sessions. (T. 387, 391, 845, 848, 851, 1027.). However, such error is harmless because the mere observation of a cane by a mental health professional does not demonstrate the medical necessity of the assistive device. *Hoke v. Colvin*, No. 1:14–CV–663 (GTS/CFH), 2015 WL 3901807, at *14 (N.D.N.Y. June 25, 2015). Social Security Ruling 96–9p provides there "must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which the assistive device is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain, and any other relevant information)." *See* SSR 96–9, 1996 WL 374185, at *7. A cane need not be prescribed to be considered medically necessary, but there must be specific medical documentation establishing the need for it and the circumstances surrounding the need. *Hoke*, 2015 WL 3901807, at *14. Plaintiff has the burden to establish such medical necessity. *Wilson v. Comm'r of Soc. Sec.*, No. 6:13–CV–643 (GLS/ESH), 2014 WL 4826757, *10–11 (N.D.N.Y. Sept. 29, 2014). A physician's observation of a patient using a cane or having an unsteady gait does not satisfy this burden. *Hoke*, 2015 WL 3901807, at *14.

While Plaintiff's mental health providers observed his use of a cane, all describe Plaintiff as having a steady gait. (T. 387, 391, 845, 848, 851, 1027). More importantly, none of Plaintiff's treating physicians, including an orthopedist, found a cane to be medically necessary or identified any significant difficulties walking. Plaintiff also testified about regularly walking long distances, taking public transportation, and working as a handyman performing "odd jobs" in his neighborhood. (T. 480, 489, 574-575, 578). Because Plaintiff failed to meet his burden,

and the ALJ considered the available medical evidence regarding the need for assistive devices in accordance with SSR 96–9p, the ALJ had substantial evidence to conclude Plaintiff's cane was not medically necessary.  *See Allen v. Comm'r of Soc. Sec.*, No. 5:14-CV-1576, 2016 WL 996381, at *8 (N.D.N.Y. Feb. 22, 2016).  Accordingly, the ALJ was not required to account for Plaintiff's use of a cane as part of the RFC determination.

        2.       Plaintiff's Mental Limitations

Following remand, Plaintiff submitted two medical opinions – an April 26, 2017, Medical Source Statement completed by Nurse Practitioner ("NP") Zhe Lin, and a January 8, 2019, Medical Source Statement prepared by therapist Christa Speach.  (T. 834-843, 903-907.) NP Lin had treated Plaintiff for his mental health impairments since 2015, and Ms. Speach had counseled Plaintiff since 2013.  (T. 837, 903.)  NP Lin's statement was co-signed by Dr. David Kang in his role as supervising physician, but Dr. Kang also noted he is not Plaintiff's treating physician.  (T. 841-843.)  Ms. Speach's statement is co-signed by Plaintiff's treating psychiatrist, Dr. Jason Stepkovitch, whose notes appear in the administrative record.  (T. 844-852, 905).  The ALJ assigned "limited weight" to both the Lin and Speach/Stepkovitch opinions because she found them inconsistent with the medical record and Plaintiff's activities of daily living.  (T. 522.)

Neither NP Lin nor Ms. Speach are acceptable medical sources under the applicable regulations.  20 C.F.R. § 416.913(a).  However, medical source statements co-signed by a treating physician should be evaluated as having been the treating physician's opinion.  *Djuzo v. Comm'r of Soc. Sec.*, No. 5:13-CV-272, 2014 WL 5823104, at *4 (N.D.N.Y. Nov. 7, 2014) ("[w]hen a treating physician signs a report prepared by . . . an 'other source' whose opinions are not presumptively entitled to controlling weight . . . the report should be evaluated under the

treating physician rule unless evidence indicates that the report does not reflect the doctor's views."). Therefore, the treating physician rule applies to Ms. Speach's statement. The ALJ was permitted to consider NP Lin's opinion as to the severity of a plaintiff's impairment and ability to work, even though her conclusions are not entitled to any special weight. 20 CFR § 416.913(d)(1).

The Speach/Stepkovitch opinion describes Plaintiff's symptoms as including decreased energy, difficulty thinking or concentrating, recurrent obsessions or compulsions, emotional withdrawal or isolation, impaired impulse control, and easy distractibility. (T. 903.) Therapist Speach opined Plaintiff is "unable to meet competitive standards" with regard to dealing with normal work stress and traveling in an unfamiliar place. (T. 904.) She also opined Plaintiff is "seriously limited, but not precluded" in his ability to maintain attention for a two hour segment; maintain regular attendance and be punctual; complete a normal workday and workweek; respond appropriately to changes in a routine work setting; and use public transportation. (*Id*.)

In a brief narrative section, Ms. Speach opined Plaintiff's OCD caused him to take extra care in completing tasks but also to "go to extremes to accomplish something, including taking unnecessary time" to finish. (T. 904.) She further opined Plaintiff has trouble with changes to his routine, isolates himself, and "normal stress is severely magnified." (*Id*.) She noted Plaintiff continues with individual therapy and medication, but "struggles at times of the year with consistency due to mood changes." (T. 905.)

When considering the opinion evidence, the ALJ recognized Dr. Stepkovitch's status as Plaintiff's treating psychiatrist. (T. 521.) However, the ALJ also noted the inconsistency between the treating psychiatrist's opinion and contemporaneous treatment notes, including his own. *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Snell v. Apfel*, 177 F.3d 128, 133 (2d

Cir. 1999) ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling.  And the less consistent that opinion is with the record as a whole, the less weight it will be given."); 20 C.F.R. § 404.1527(c)(2).  For example, Dr. Stepkovitch's and Ms. Speach's examination notes show general improvements in Plaintiff's compulsive cleaning behavior in response to treatment, with a reduction "of 50% or more" in his obsessive cleaning habits and Plaintiff's use of safer alternatives to bleach. (T. 469, 845, 895.)  During mental status examinations conducted in 2018 and 2019, Plaintiff consistently demonstrated coherent and goal-directed thought patterns.  (T. 845, 848, 851, 895, 928, 1027.)  Dr. Stepkovitch generally described Plaintiff as pleasant and cooperative, with intact attention and concentration, even on days when Plaintiff reported his compulsive thoughts were worsening.  (T. 845, 848, 851, 1027.)

Although the Speach/Stepkovitch opinion described Plaintiff's compulsive tendencies as debilitating, Plaintiff consistently described himself as able to cook, clean, do laundry, shop, manage money, use public transportation, and attend addiction support group meetings on a regular basis.  (T. 378, 380, 575.)  *See Domm v. Colvin*, 579 F. App'x 27, 28 (2d Cir. 2014) (holding ALJ may consider the claimant's "testimony regarding her daily functioning" when weighing opinion evidence).  During treatment sessions, Plaintiff also reported performing "odd jobs" as a handyman and traveling to his hometown in New Jersey.  (T. 488, 498, 866, 876.)

As described in his treatment notes, Plaintiff reported aggravated symptoms during periods of significant and understandable stress, such as the loss of an apartment, the partial amputation of his finger, and the death of a beloved pet.  (T. 489, 895.)  Ms. Speach's opinion also appears to factor in Plaintiff's statement during a counseling session blaming his compulsive cleaning habits for the loss of part of his finger. (T. 895, 905.)  However, the

contemporaneous treatment and surgery records indicate the injury occurred while Plaintiff was installing a window, and there is no indication the resulting infection was caused or aggravated by cleaning chemicals, or otherwise attributable to Plaintiff's psychiatric impairments.  (T. 909, 916, 924, 949.)

NP Lin described Plaintiff's symptoms as including feelings of guilt or worthlessness, difficulty thinking or concentrating, impairment of impulse control, persistent mood disturbances, memory impairment, recurrent obsessions or compulsions, and emotional withdrawal or isolation.  (T. 834.)  Using a check-box form, she opined Plaintiff is "unable to meet competitive standards" in several functional areas: accepting instructions and responding appropriately to criticism from supervisors; responding appropriately to changes in a routine work setting; and travelling in an unfamiliar place.  (T. 835.)  She further opined Plaintiff is "seriously limited, but not precluded" in other areas: completing a normal workday and workweek without interruption from psychologically based symptoms; dealing with normal work stress; and using public transportation.  (*Id.*)  As with the previous opinion, the ALJ contrasted NP Lin's observations with the contemporaneous psychiatric treatment notes in the record suggesting more moderate functional limitations, particularly with regard to stress and travel.  (T. 521-522.)

In evaluating this evidence, the ALJ discounted, but did not wholly disregard, the Speach/Stepkovitch and Lin opinions in her RFC determination.  Consistent with the expressed concerns about Plaintiff's ability to handle stress and respond to changes in his routine, the ALJ limited Plaintiff to jobs involving "simple, repetitive, work-related stress," "consistent job duties," and "superficial contact with the public."  (T. 518.)  She also excluded work requiring "more complex interaction or joint effort to achieve work goals."  (*Id.*)

23

Overall, however, the ALJ assigned the greatest weight to the opinion of Dr. Jeanne Shapiro, who performed a consultative examination of Plaintiff on January 27, 2015.  (T. 375-379.)  During the examination, Plaintiff reported he had been diagnosed with PTSD and OCD, and regularly experienced depressive episodes during which he cries, wants to be alone, and is unmotivated and lethargic.  (T. 376.)  He exhibited a cooperative demeanor, and an adequate manner of relating, social skills and overall presentation.  (T. 377.)  Dr. Shapiro observed a coherent and goal-directed thought process, with no evidence of delusions, hallucinations, or disordered thinking.  (*Id*.)  Plaintiff's attention and concentration appeared intact, and he was able to perform simple counting and calculation exercises.  (T. 378.)

Based on her examination, Dr. Shapiro opined Plaintiff appeared to have no limitations in understanding and following simple instructions and directions, and no limitations performing simple tasks.  (*Id*.)  She opined Plaintiff had mild limitations performing complex tasks but no limitations maintaining attention and concentration or attending to a routine and maintaining a schedule.  (*Id*.)  She further opined Plaintiff had no limitation with regard to learning new tasks, but moderate limitations with regard to making appropriate decisions.  (*Id.*)  In Dr. Shapiro's opinion, Plaintiff was mildly-moderately limited in his ability to consistently relate to and interact well with others, and had mild limitations regarding his ability to deal with stress.  (*Id.*)

The ALJ assigned greater weight to Dr. Shapiro's opinion because it was consistent with her examination results and the overall record.[7]  (T. 521-522.)  A consultative examiner's opinion may be accorded greater weight than a treating source's opinion where the ALJ finds it more consistent with the medical evidence.  *See Suttles v. Colvin*, 654 F. App'x 44, 46 (2d Cir.

---

[7] The ALJ also considered the opinion Dr. Sandra Juniga, a state agency psychologist who opined Plaintiff's mental impairments were not severe.  (T. 66, 521.) The ALJ did not assign a specific weight to this opinion, but questioned its reliability because Dr. Juniga only had access to a partial record and did not examine Plaintiff.  (T. 521.)

2016) (summary order) (no error by ALJ to give great weight to consultative examiner's opinion because it was consistent with record evidence); *Mayor v. Colvin*, No. 15 Civ. 0344 (AJP), 2015 WL 9166119, at *18 (S.D.N.Y. 2015) ("An ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence.").

Plaintiff contends Dr. Shapiro's 2015 opinion is "stale" because she did not have access to the more recent medical records available to NP Lin and Dr. Stepkovitch. This argument is unpersuasive. An ALJ is not required to receive an updated consultative examiner report whenever new evidence is available, unless the additional evidence may change the state medical experts' opinions. *Pickett v. Colvin*, No. 3:13–CV–0776 (LEK); 2015 WL 5749911, at *10 (N.D.N.Y. Sept. 30, 2015). By itself, "[a] gap of time between when an opinion is rendered and the disability hearing and decision does not automatically invalidate that opinion." *Majdandzic v. Comm'r of Soc. Sec.*, No. 17-CV-1172, 2018 WL 5112273, at *3 (W.D.N.Y. Oct. 19, 2018). Only a "*meaningful* change" in Plaintiff's condition during the gap will do so. *Lamar v. Comm'r of Soc. Sec.*, No. 18-CV-829, 2020 WL 548376, at *3 (W.D.N.Y. Feb. 4, 2020) (emphasis supplied). A consultative opinion such as Dr. Shapiro's may become stale "if the claimant's condition deteriorates after the opinion is rendered and before the ALJ issues his decision." *Maxwell H. v. Comm'r of Soc. Sec.*, 1:19-CV-0148 (LEK/CFH); 2020 WL 1187610, at *5 (N.D.N.Y. March 12, 2020) (quoting *Clute ex rel. McGuire v. Comm'r of Soc. Sec.,* No. 18-CV-30, 2018 WL 6715361, at *5 (W.D.N.Y. Dec. 21, 2018).

Plaintiff has not identified any significant new diagnosis or deterioration in Plaintiff's condition rendering Dr. Shapiro's opinion "stale." Therefore, the ALJ was not required to order a second consultative report or otherwise discount Dr. Shapiro's report. In addition, Plaintiff has

not identified any recent medical records rendering either the Speach/Stepkovitch or Lin opinion

more reliable.  Indeed, the ALJ found Dr. Shapiro's opinion to be consistent with the more

recent treatment notes added to the record, as well as reports post-dating the consultative

examination depicting Plaintiff as occasionally working as a handyman, socializing with family

and his girlfriend, and expressing an interest in taking computer courses and obtaining a

bachelor's degree.  (T. 488, 498, 522, 949, 975, 1017.)  Because the ALJ provided substantial

evidence to support the weights assigned to each of the medical opinions, this Court will not

disturb it.  *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7

(N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and

resolve material conflicts where sufficient evidence provides for such."); *accord Petell v.

Comm'r of Soc. Sec.*, No.7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar.

21, 2014).

At best, Plaintiff's complaints regarding the medical opinion evidence and the resulting

RFC determination are premised upon a disagreement over how the ALJ resolved arguably

conflicting evidence about Plaintiff's functional limitations.  This Court will not reweigh the

evidence presented to the ALJ.  *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185

(GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the

substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh

the evidence presented at the administrative hearing, . . . nor will it determine whether [the

applicant] actually was disabled.  [Rather], [a]bsent an error of law by the Secretary, [a] court

must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting

*Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-

recommendation* adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*,

830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to

reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642

(2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination to be supported by

substantial evidence.

### C.    Substantial Evidence Supports the ALJ's Step Five Determination

Plaintiff has not raised any specific challenge to the ALJ's Step Five determination in the

July 24, 2019, decision, so this Court will only briefly address this issue.  At Step Five, the

burden shifts to the Commissioner "to show there is other work that [the claimant] can perform."

*McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir.

2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work

permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."

*Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605

(2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a

hypothetical question incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d

107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of

work as long as the hypothetical facts the expert is asked to consider are based on substantial

evidence and accurately reflect Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274,

276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is

supported by substantial facts, the hypothetical is proper.  *Id*. at 276-77.

VE Michael Smith testified at the hearing.  (T. 82-86.)  Because this Court has found the

ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's

hypothetical to VE Smith was proper, and her Step Five determination was supported by

substantial evidence.  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports her determination Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 404.1520(g).

      **WHEREFORE**, it is hereby

      **ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is **<u>DENIED</u>**; and it is further

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 12) is **<u>GRANTED</u>**; and it is further

      **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**, and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated:  November 3, 2020
       Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge